CHRIS D. KUHNER, ESQ. (Bar No. 173291)
**KORNFIELD, NYBERG, BENDES, KUHNER & LITTLE P.C.**
1970 Broadway, Suite 600
Oakland, California 94612
Telephone: (510) 763-1000
Facsimile: (510) 273-8669
Email: c.kuhner@kornfieldlaw.com

Attorneys for Debtor-In-Possession Project Pizza, LLC

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| In re | Case No. 25-30397 HLB |
|---|---|
| Project Pizza, LLC, | Chapter 11 |
| Debtor. | **STIPULATION RE (1) REJECTION OF CONTRACT WITH INKIND CARDS, INC., INKIND CREDIT FUND LP, AND INKIND WAREHOUSE FACILITY LLC; (2) HONORING EXISTING CREDITS; AND (3) ALLOWANCE OF INKIND CLAIM** |

Project Pizza, LLC, Chapter 11 debtor and debtor in possession, (the "Debtor") and inKind Cards, Inc., inKind Credit Fund LP, and inKind Warehouse Facility LLC (collectively, "inKind") hereby stipulate as follows:

**FACTUAL BACKGROUND**

1. The Debtor is an Italian restaurant located on Clement Street in San Francisco, California. The Debtor does business as Fiorella Clement. On May 20, 2025, the Debtor filed for protection under Chapter 11 of the Bankruptcy Code electing to proceed pursuant to subchapter V of the Bankruptcy Code. Gina Klump was appointed as the subchapter V trustee. The Debtor remains as debtor in possession.

2.  The Debtor is one of four (4) restaurants that the ownership group that founded the Debtor operate in San Francisco. The other restaurants include Project Pizza Polk LLC dba Fiorella Polk, Project Pizza Sunset LLC dba Fiorella Sunset (currently in a Chapter 11 bankruptcy in related Case No. 25-30258), and Project Pizza Noe LLC dba Fiorella Noe ("Affiliate Restaurants"). The Affiliate Restaurants are operated by an entity called Fiorella Restaurant Group.

3.  On March 10, 2022, prior to filing this bankruptcy case, the Debtor, Project Pizza Sunset LLC, Project Pizza Polk LLC, and inKind entered into a Contract (the "Contract") which was amended several times. Attached as group **Exhibit A** to the declaration of Boris Nemchenok is a true and correct copy of the Contract and amendments. On March 30, 2022, the Debtor and the Affiliate Restaurants received $150,000 in working capital from inKind in exchange for $300,000 in credit for use at any of the Affiliate Restaurants, and authorized inKind to sell such credits to its customers. On March 9, 2023, the Debtor and the Affiliate Restaurants received an additional $150,000 in working capital in exchange for $300,000 in credit for use at any of the Affiliate Restaurants, and authorized inKind to sell such credits to its customers. On March 21, 2024, the Debtor and the Affiliate Restaurants received an additional $100,000 in working capital in exchange for $200,000 in credit for use at any of the Affiliate Restaurants, and authorized inKind to sell such credits to its customers. On June 25, 2024, the Debtor and the Affiliate Restaurants received $200,000 in working capital in exchange for $400,000 in credit for use at any of the Affiliate Restaurants, and authorized inKind to sell such credits to its customers. On September 17, 2024, Debtor and the Affiliate Restaurants received an additional $100,000 in working capital in exchange for $200,000 in credit for use at any of the Affiliate Restaurants, and authorized inKind to sell such credits to its customers.

4.  As of May 23, 2025, inKind had sold and customers had used $863,043 in credit under the Contract. $536,957 in credit remains unsold. There is $14,103 in outstanding House Account balances previously sold by inKind that has not been redeemed by the holding customers.

5.  Customers who purchase credit from inKind can then redeem it at the Debtor's restaurant and any of the Affiliate Restaurants.

6. In addition, the Contract provides that inKind supply marketing services for the Debtor, which obligation inKind has satisfied. Under the terms of the Contract after twelve (12) months from the date of the funding, inKind, at its sole discretion, may require the Debtor to "buy back" any remaining credit at a rate of $1.12 per $2.00 of credit. Finally, the Contract provides that the debt arising under the Contract is secured by the Debtor's personal property. However, inKind did not file a UCC-1 Financing Statement with the California Secretary of State's office.

7. The Debtor and inKind dispute whether the Contract is executory, as defined in the Bankruptcy Code, and, thus, whether the Contract can be rejected. In an effort to resolve such dispute, and without admitting to any designation of the Contract being executory, the Parties have agreed to allow the Debtor to take the actions set forth herein.

8. The Debtor shall honor the outstanding credits up to $14,204 if a customer presents the credits as a form of payment and/or otherwise asks to checkout with the inKind mobile application at the Debtor's location or any of the Affiliate Restaurants.

9. On June 5, 2025, inKind filed a claim for an unsecured claim, Claim No. 6, in the amount of $459,705 ("inKind Unsecured Claim").

10. inKind and the Debtor have engaged in informal negotiations to resolve the disputes regarding the Contract, including the allowance of the inKind Unsecured Claim.

**WHEREFORE**, inKind and the Debtor hereby stipulate as follows.

**IT IS STIPULATED** that:

1. That the Contract is deemed rejected as of May 20, 2025.

2. That inKind shall allow the use of customer credits, specifically from House Accounts, totaling not more than $14,204 and thereafter shall deactivate the application to the Debtor's restaurant and the Debtor shall honor up to the $14,204 in customer credits.

3. The inKind Unsecured Claim shall be allowed in the amount of $459,705.

Dated: July 29, 2025        Kornfield, Nyberg, Bendes, Kuhner & Little, P.C.

By: /s/ Chris D. Kuhner
(Bar No. 173291)
Attorneys for Debtor-In-Possession

Dated: July 21, 2025        Pachulski, Stang, Ziehl & Jones

By:/s/ Jason S. Pomerantz
Jason S. Pomerantz
Attorneys for inKind Cards, Inc., inKind Credit Fund LP, and inKind Warehouse Facility LLC